# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| RAYMOND J. CERILLI, | : | |
| Plaintiff, | : | No. 3:20-cv-1425 (KAD) |
| | : | |
| v. | : | |
| | : | |
| NED LAMONT, et al., | : | |
| Defendants. | : | |
| | : | |

## INITIAL REVIEW ORDER

Plaintiff, Raymond J. Cerilli ("Cerilli"), currently incarcerated at Osborn Correctional Institution, brings this civil rights action *pro se* pursuant to 42 U.S.C. § 1983.  Cerilli names sixteen defendants: Governor Ned Lamont; Dr. Carson Wright;[1] Dentist Katz;[2] CCO Furey; Nurse Hanna; Deputy Warden Thibeault; Deputy Warden Hines; Commissioner R. Cook; Blood Medic Jane Doe; Dr. John Doe; Accounts Jane Doe; FOI Liaison Acanto; Grievance Coordinator Moore; Lieutenant Shepherd; Captain Colon, and Dr, Rodney Nickel.  The Complaint appears to contain three versions of his claims, along with affidavits and exhibits and totals 568 pages.[3]

The complaint and motion to proceed *in forma pauperis* were received on September 22, 2020.

## Motion to Proceed *In Forma Pauperis*

---

[1] Cerilli identifies this defendant in the list of defendants in the body of the complaint as Dr. Gary Wright. Doc. No. 1 at 4.

[2] Cerilli lists this defendant as Dr. Catz.  Documents attached to the complaint show that her name is Katz. *See, e.g*., Doc. No. 1 at 268.  The court will use the correct spelling.

[3] The Complaint is largely inscrutable. Throughout the Complaint the Plaintiff writes in snippets and half sentences in what appears to be a stream of consciousness discourse. He includes editorial commentary regarding various defendants. He writes sideways in the margins of the pages and repeats himself on occasions too numerous to count. Most important perhaps, it is simply impossible to discern any time line of events which give rise to his claims.

The Prison Litigation Reform Act amended the statute governing proceedings filed *in forma pauperis*. This amendment was intended "[t]o help staunch a 'flood of nonmeritorious' prisoner litigation." *Lomax v. Ortiz-Marquez*, ___ U.S. ___, 140 S. Ct. 1721, 1723 (2020) (quoting *Jones v. Bock*, 549 U.S. 199, 203 (2007)).

In relevant part, Section 804(d) of the Prison Litigation Reform Act amended 28 U.S.C. § 1915 by adding the following subsection:

> (g)  In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

Cerilli previously has had more than three cases dismissed as frivolous. *See, e.g., Cerilli v. Meachum*, 3:95cv113 (DJS) (dismissed Jan. 19, 1995); *Cerilli v. State of Connecticut*, 3:98cv1370 (AHN) (dismissed June 16, 1999); *Cerilli v. Williams*, 3:98cv1703 (DJS) (dismissed Feb. 26, 1999); *Cerilli v. State of Connecticut*, 3:99cv1058 (GLG) (dismissed Oct. 14, 1999); *Cerilli v. Cay*, 15-1129 (2d Cir.) (appeal dismissed Sept. 30, 2015). Because the three strikes provision applies in this case, Cerilli may not bring this action without payment of the filing fee absent allegations of "imminent danger of serious physical injury." *See Pettus v. Morganthau*, 554 F.3d 293, 297 (2d Cir. 2009) ("indigent three-strikes prisoner [may] proceed IFP in order to obtain a judicial remedy for an imminent danger").

To proceed without prepayment of the filing fee, Cerilli must meet two requirements: (1) the imminent danger of serious physical injury he alleges is fairly traceable to unlawful conduct

alleged in the complaint and (2) a favorable judicial outcome would redress the injury. *See id.* at 296-97.[4]  In addition, the danger of imminent harm must be present at the time the complaint is filed. *See id.* at 296.  If Cerilli meets this requirement, *in forma pauperis* status applies to all claims in the complaint. *See Chavis v. Chappius*, 618 F.3d 162, 171-72 (2d Cir. 2010).

In his motion to proceed *in forma pauperis*, Cerilli states that he is bleeding from the top of his mouth and the top of his arms, and that the dentist told him he has cancer in his jaw. Doc. No. 2 at 1, 8.  As noted above, the complaint does not provide a clear statement of Cerilli's claims.  It does however include allegations which appear to be directed at each defendant.  From these descriptions, the court discerns the following current medical issues.  First, from August 3, 2020 through September 2, 2020, Cerilli has been complaining about bleeding from large blisters on his arms and an inability to urinate but Dr. Wright has provided no treatment.  Doc. No. 1 at 7 ¶ 1.  He alleges that he cannot urinate "the right way." *Id.* at 35.  He also alleges that a nurse told him he should be examination by a dermatologist, but no referral was made. *Id.* at 30 ¶ 8. Second, Cerilli alleges that Dr. Katz, the dentist, told him that he appears to have cancer in his upper jaw but has done nothing to address it. *Id.* ¶ 2.  In another part of the Complaint, however, he alleges that Dr. Katz wanted Cerilli to "go to pathology" but that did not happen. *Id.* at 31 ¶ 16.  Cerilli alleges that Dr. Katz has denied, or reduced his prescription for, Dexamenthasone to treat lichen planas in his mouth because he was taking too much of the drug. *Id.* at 7-8 ¶ 2 and at 35.  Included in the numerous exhibits is the record of a dental exam in 2013 indication a

---

[4] Although at least twice Cerilli indicates that his prayer for relief is purely financial damages, at other points, he appears to be seeking orders that he be treated and for other injunctive relief. Hopefully Cerilli will clarify this additional point of confusion in his amended complaint.

maxillary lesion, a referral in September 2014 for oral surgery, and acknowledgment of a referral to oral pathology in August 2020. *Id.* at 192, 194, 268.

"'[B]ecause § 1915(g) concerns only a threshold procedural question'—specifically the question of whether 'imminent danger' exists—we need not 'make an overly detailed inquiry.'" *McFadden v. Noeth*, No. 19-585-PR, 2020 WL 5415469, at *2 (2d Cir. Sept. 10, 2020) (quoting *Chavis*, 618 F.3d at 169). The Second Circuit has "warned against challenges to IFP status 'metastasiz[ing] into a full-scale merits review.'" *Id.* (quoting *Shepherd v. Annucci*, 921 F.3d 89, 93 (2019)).

Cerilli alleges that he is not being treated for bleeding from his mouth and arms and an inability to urinate. He also alleges that the issues with his jaw have developed into cancer. The Court has not located any reported cases determining whether these conditions meet the section 1915(g) exception. However, as the court cannot state, based on the current record, that Cerilli's allegations of imminent danger are "conclusory or ridiculous," the motion to proceed *in forma pauperis* is granted. *Chavis*, 618 F.3d at 170 (*in forma pauperis* status properly denied if allegations of imminent danger are conclusory or ridiculous but should be granted if allegations permit a plausible inference that alleged danger was real). If the defendants are of a different view, they may seek vacatur of this decision.

**Standard of Review**

Under section 1915(e)(2)(B) of title 28 of the United States Code, the court must dismiss a case if the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the plaintiff seeks monetary relief from a defendant who is immune from such relief. *Id.* In reviewing a *pro se* complaint, the court must assume the truth of the

4

allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."
*Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *see also Tracy v. Freshwater*, 623 F.3d 90,
101-02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).  Although
detailed allegations are not required, the complaint must include sufficient facts to afford the
defendants fair notice of the claims and the grounds upon which they are based and to
demonstrate a right to relief.  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007).
Conclusory allegations are not sufficient.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The
plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."
*Twombly*, 550 U.S. at 570.

**Allegations**

As noted above, Cerilli fails to set forth the facts or events giving rise to his complaint in
any cohesive fashion. He does put forth his allegations, in large measure, on a defendant by
defendant basis.  The court therefore summarizes his allegations as to each defendant.

**Dr. Carson Wright**

Cerilli complained about bleeding from blood blisters on the tops of his arms from
August 3, 2020 through September 2, 2020.  Although he has gone to sick call several times,
nothing has been done.  Dr. Wright told Cerilli that there were no vitamins in his blood but has
done nothing to address it.  Cerilli also told Dr. Wright that he cannot urinate.  Doc. No. 1 at 7,
29.  Cerilli alleges that the blisters were caused by a change in his medication and that the same
thing happened years earlier.  *Id.* at 30.  On August 25, 2020, one blood blister was 2½" in
diameter.  *Id.* at 33.  Cerilli alleges that, on August 13, 2020, he asked Dr. Wright for a blood test
or dermatology referral.  Dr. Wright denied the request, stating that Cerilli would sue if toxins

5

were found in his blood.  *Id.* at 30.

**Dr. Katz**

Dr. Katz, the dentist, has done nothing for several months to address Cerilli's dental and oral issues.  She told him that his upper jaw "looks like cancer" and wanted him to "go to pathology."  *Id.* at 7, 31.  The visit was cancelled because UConn was only providing emergency service.  *Id.* at 31.  She also discontinued medication or failed to give him the proper amount.  Dr. Katz told him that he was using too much Dexamethasone to treat lichen planas in his mouth.  *Id.* at 7-8, 36.

**RCCO Furey**

Cerilli wrote to Furey to have 10mg oxycodone restored.  The medication was prescribed by "pain management."  *Id.* at 8.  Cerilli states that it is painful to get out of bed without the additional 10 mg.  *Id.* at 9.

**Nurse Hanna**

Cerilli saw Hanna for his complaint of bleeding from his arms on August 14, 2020.  He also told her about his difficulty urinating.  *Id.*  She denied him blood work.  *Id.* at 14, 30.

**Deputy Wardens Thibeault and Hines**

Cerilli states that deputy wardens should be in charge of the medical unit and appears to hold them responsible for his non-medical claims as well.  *Id.* at 10-13.

**Commissioner Cook**

Cerilli submitted request to the commissioner's officer regarding his medical issues, COVID-19. and the confiscation of a CD.  Instead of investigating and taking action, Cook assigned the complaints to Captain Colon.  *Id.* at 13-14.

**Dr. John Doe**

Cerilli merely states that Dr. Doe was deliberately indifferent to his medical needs but refers only to the lack of a diet.  *Id.* at 14.

**Jane Doe Blood Medic**

Medic Doe obtained a urine sample from Cerilli without a doctor's order.  She told him she would call him back for blood tests but never did.  *Id.* at 15, 30.

**Governor Lamont**

The governor has never visited Osborn Correctional Institution.  He relies on reports from correctional staff and takes no action when correctional staff steal soap and deodorant intended for inmate use.  He has provided no medication or ventilators to use in response to COVID-19 and has enacted a law that no person under age 65 is eligible for compassionate release.  Cerilli accuses Lamont of removing $100,000,000 per year from prison accounts.  *Id.* at 15-17.

**Jane Doe Accounts**

Inmate Accounts used to allocate only 20% of any deposits in his inmate account to pay filing fees in federal cases, dealing with the cases sequentially.  After the Supreme Court held that 20% of any deposit should be allocated to each federal case for which a fee is owed, Inmate Accounts began allocating 40% of each deposit, 20% to each of Cerilli's two cases.  Cerilli also alleges that he has paid more than he has been credited with paying.  *Id.* at 17-20.

**FOI Liaison Acanto**

Cerilli alleges that Acanto told Cerilli that the Inmate Accounts could take 40% of his deposits because he has two cases on which he owes filing fees.  Cerilli states that he has filed a case with the Connecticut Claims Commissioner on this issue.  *Id.* at 21.

### Grievance Coordinator Moore

Cerilli alleges that Moore was also at the meeting where he was told 40% of his deposits could be withdrawn.  Moore responded to only one of Cerilli's grievances.  *Id.* at 21-22.

### Lieutenant Shepherd

Cerilli alleges that Shepherd would not return the CD that Captain Colon confiscated even though Cerilli told him that the CD was made by a court reporter and contained medical records he needed for an appeal.  *Id.* at 22-23.

### Captain Colon

Colon spoke with Cerilli about his several communications to Commissioner Cook.  Colon said he would speak to Dr. Nickel about Cerilli's medication, but nothing changed.  Colon also said he would speak with Shepherd about the CD, but the CD was not returned to Cerilli.  *Id.* at 23-25.

### Dr. Rodney Nickel

Dr. Nickel denied Cerilli's request for a special diet and denied his pain medication.  Cerilli suggests that this was part of his case before the Claims Commissioner.  *Id.* at 25.  Cerilli wants a no-salt no-soy diet because he believes that soy is harmful to men, and to him in particular, and caused his high cholesterol.  Cerilli also complains that the diabetic diet has too many greens and too much white bread.  *Id.* at 37.

### Medical Conditions

Cerilli generally alleges that he suffers from diabetes, pain in his neck and back, lumps in his neck and chest, heart problems, cancer in his jaw, high cholesterol, and high blood pressure.  *Id.* at 25-26, 29, 31.  He needs new dentures.  *Id.* at 31.  Cerilli was prescribed 10mg Oxycodone

8

by pain management during the day and 5mg at night to address his back and neck pain.
Without it he "almost cannot walk" and it is painful to put on his pants.  *Id.* at 31, 33, 35.

Cerilli alleges that he is experiencing the effects of exposure to radon gas at Garner
Correctional Institution from the end of 2013 through 2015.  *Id.* at 38.   He alleges that the
"radon gas attorneys are not doing anything" for him.  *Id.*  Cerilli has not, however, included any
defendants who would have been responsible for his exposure.

**Discussion**

Cerilli contends that Drs. Wright and Doe and Nurse Hanna were deliberately indifferent
to his medical needs because they denied treatment in August 2020.  *Id.* at 44-45   Defendants
Shepherd and Colon deprived him of the CD sent to him as his legal mail, thereby interfering
with his access to the courts.  *Id.* at 45-46.  Defendant Moore failed to respond to his grievances.
*Id.* at 46.   In addition to the listed claims, the court infers that Cerilli also is asserting claims for
negligence against defendant Blood Medic Doe; deliberate indifference to medical needs against
Dr. Nickel; deprivation of property against Jane Doe Accounts, FIO Liaison Acanto, and Moore;
deliberate indifference to dental needs against Dr. Katz;, and supervisory liability against
Governor Lamont, Commissioner Cook and Deputy Wardens Thibeault and Hines.

**Deliberate Indifference to Medical and Dental Needs**

Cerilli asserts claims for deliberate indifference to various medical needs.  Cerilli states
that all medical staff members named as defendants work at Osborn Correctional Institution.  He
has noted on an exhibit that he came to Osborn about one year ago.  Doc. No. 1 at 553.  Thus, the
court assumes that Cerilli is challenging his medical treatment at Osborn during the last year.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs. *Spavone v. New York State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013). To state a claim for deliberate indifference to a serious medical need, Cerilli must show both that his need was serious, and that the defendants acted with a sufficiently culpable state of mind. *See Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)).

There are both objective and subjective components to the deliberate indifference standard. Objectively, the alleged deprivation must be "sufficiently serious." *Spavone*, 719 F.3d at 138. The condition must produce death, degeneration or extreme pain. *See Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996). This inquiry "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *See Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). A "sufficiently serious" deprivation can exist if the plaintiff suffers from an urgent medical condition that is capable of causing death, degeneration, or extreme or chronic pain. *See Brock v. Wright*, 315 F.3d 158, 162–63 (2d Cir. 2003); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

A medical condition may not initially be serious, but may become serious because it is degenerative and, if left untreated or neglected for a long period of time, will "result in further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 136–37 (2d Cir. 2000). The Second Circuit has identified several factors that are "highly relevant" to the question of whether a medical condition is sufficiently serious, including "an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily

10

activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

The defendants also must have been "subjectively reckless." *Spavone*, 719 F.3d at 138. They must have been actually aware of a substantial risk that plaintiff would suffer serious harm as a result of their actions or inactions. The defendants "need only be aware of the risk of harm, not intend harm. And awareness may be proven 'from the very fact that the risk was obvious.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 842 (1994)).

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. *See Salahuddin*, 467 F.3d at 279-80. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not constitute deliberate indifference. *Farmer*, 511 U.S. at 838.

Nor does a disagreement over the treatment provided show deliberate indifference. See *Wright v. Rao*, 622 F. App'x 46, 47 (2d Cir. 2015) (citing *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998)); *Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) ("It has long been the rule that a prisoner does not have the right to choose his medical treatment as long as he receives adequate treatment .... [T]he essential test is one of medical necessity and not one simply of desirability." (internal quotation marks and citations omitted)).

Cerilli presents conflicting evidence on his dental claims. He alleges that Dr. Katz has provided no treatment but submits a copy of an inmate request to which Dr. Katz responded on August 21, 2020 stating that Cerilli has been referred to an oral pathologist and she is working on scheduling the appointment. Doc. No. 1 at 268. Cerilli also submits evidence from March 2020 that he refused to be seen by the oral pathologist because the pathologist was at UConn and

11

Cerilli refused to go there.  *Id.* at 280.  In response to an earlier request concerning his medication, Dr. Katz indicated that his medication had been renewed and that there had been a hold-up with the pharmacy.  She explained that these requests should have been directed the pharmacy, not to her.  *Id.* at 269.  Cerilli alleges that Dr. Katz reduced his Dexamenthasone prescription to treat lichen planas in his mouth but concedes that she did so because he was using too much of the medication.  *Id*. at 7-8, 35.  In light of the possible severity of Cerilli's condition, cancer in his upper jaw and the confusion over his medication, the court will permit this claim to proceed against Dr. Katz for repleading and further development of the record to determine whether Cerilli's claim is based on a denial of or improper treatment on the one hand or merely a disagreement over treatment on the other.

Cerilli also alleges that he has been bleeding from large blood blisters on the tops of his arms but has not been treated for a month.  He was seen, but nothing was done.  He also alleges that he has complained about difficulty urinating for the same period with no treatment.  Cerilli also objects to the presence of soy in his diet and effects of what he terms "fake medication."  The court assumes that Cerilli is arguing that some of his symptoms are a reaction to generic medications.  Based on the record, the court cannot determine whether these conditions are serious medical needs.  The court will permit these claims to proceed against Drs. Wright, Doe, and Nickel and Nurse Hanna for repleading and further development of the record.

Finally, Cerilli alleges that defendant Furey has denied him prescribed pain medication to address his back and neck pain.  It appears that Cerilli was prescribed 10 mg oxycodone during the day and 5 mg at night.  It is not clear from the complaint whether he seeks a change in the dosage or is arguing that he has not received the medication prescribed.  At this time, the court

12

will permit the claim to proceed for repleading and further development of the record.

**Negligence**

Cerilli contends that Blood Medic Doe was negligent by obtaining a urine sample without prior authorization from a doctor and seeks damages from her in her individual capacity. As noted above, negligence does not rise to the level of deliberate indifference required to state a cognizable section 1983 claim. *See Salahuddin*, 467 F.3d at 279-80.

In addition, state statutes provide: "No state officer or employee shall be personally liable for damage or injury, not wanton, reckless or malicious, caused in the discharge of his or her duties or within the scope of his or her employment." Conn. Gen. Stat. § 4-165. The Connecticut Supreme Court interprets this provision to mean that "state employees may not be held personally liable for their negligent actions performed within the scope of their employment." *Miller v. Egan*, 265 Conn. 301, 319, 828 A.2d 549, 561 (2003). As Blood Medic Doe was acting in the scope of her employment, she is statutorily immune from Cerilli's claim for damages. The claim against her is dismissed pursuant to 28 U.S.C. § 1915A(b)(2).

**Withdrawals from Inmate Account**

Cerilli challenges the method of applying funds from deposits to his inmate account toward payment of filing fees owed on his federal cases.

When an inmate is granted leave to proceed in forma pauperis, he is required under federal law to pay the entire filing fee. *See* 28 U.S.C. § 1915(b)(1) (" if a prisoner brings a civil action or files an appeal in forma pauperis, the prisoner shall be required to pay the full amount of a filing fee"). *In forma pauperis* status only relieves the inmate of prepayment of the fee. *See* 28 U.S.C. § 1915(b)(2) (requiring prisoner to make monthly payments of 20% of the preceding

month's income toward the filing fee).

If an inmate owes filing fees on more than one case, the statute does not specify whether the monthly payment should be made to as to both cases each month, or whether the fees are paid sequentially over time one case at a time.  In 2016, the Supreme Court resolved this question.  In *Bruce v. Samuels*, 577 U.S. 82 (2016), the Supreme Court held that section 1915(b)(1) requires that filing fee obligations for multiple cases be assessed simultaneously, not sequentially.  *Id.* at 87.

Previously, the Department of Correction assessed fees sequentially. After *Bruce*, it began assessing fees simultaneously for all cases, even those filed before *Bruce* was decided. Thus, because Cerilli owed fees on two cases, the Department of Correction began allocating 40% of deposits to his inmate account toward payment of the outstanding fees. Cerilli asserts that he is grandfathered under the former allocation method and that the Department of Correction should continue to allocate only 20% of his deposits toward the filing fees.

Cerilli previously challenged this practice in federal court and the court found the practice lawful.  *See Cerilli v. Malloy*, No. 3:16-cv-2086 (SRU) (D. Conn. Mar. 1, 2017) (Doc. No. 15, Ruling and Order denying motion for reconsideration which also included request to order Department of Correction to cease using new simultaneous method of assessing filing fees).  The documents Cerilli signed authorizing the Department of Correction to allocate money from his inmate account toward the filing fee in each case state only that he agreed to have 20% of all deposits allocated to pay the fee in that particular case.  The documents do not state that fees for multiple cases will be assessed sequentially.  The Department of Correction's decision to correct the manner in which monies are allocated consistent with the Supreme Court's

14

interpretation of the statute is not unlawful.  This claim, asserted against Jane Doe Accounts, FOI Liaison Acanto, and Grievance Coordinator Moore, is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Stolen Money**

Cerilli alleges that Acanto has stolen money from him.  One of his exhibits refers to improper allocation of monies toward filing fees.  Doc. No. 1 at 368.  Any constitutional claim for deprivation of money would be a claim for deprivation of property without due process. Such claims are not cognizable under section 1983 if the state provides an adequate post-deprivation remedy.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (prisoner has no due process claim based on unauthorized deprivation, either intentional or negligent, of property by a state employee if state provides meaningful post-deprivation remedy for the loss).  Cerilli may file a claim with the Office of the Connecticut Claims Commission and indeed, he states that he has done so.  The Second Circuit has found that Connecticut has provided adequate post-deprivation remedies.  *See Riddick v. Semple*, 731 F. App'x 11, 13-14 (2d Cir. 2018).  Insofar as he has availed himself of the state remedies, Cerilli cannot state a cognizable claim regarding any allegedly stolen monies.

**Failure to Respond to Grievances**

Cerilli alleges that Grievance Coordinator Moore failed to respond to his grievances. Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes … create

15

federally protected due process entitlements to specific state-mandated procedures'") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).  This claim is therefore dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

**Claims for Confiscation to CD/Denial of Access to Courts**

Cerilli alleges that defendants Colon and Shepherd violated his right of access to the courts by confiscating a CD containing exhibits he needed to file in connection with a state appeal.  Cerilli is asserting this same claim in his case before the Connecticut Claims Commission.  *See* Doc. No. 1 at 216, 218-26.  For the reasons discussed above, Cerilli cannot state a cognizable due process claim for loss of the CD.

Regarding access to the courts, Cerilli must show that the defendants acted deliberately and maliciously and that he suffered an actual injury.  *Lewis v. Casey*, 518 U.S. 343, 353 (1996). To constitute an actual injury, the defendants' actions must have hindered Cerilli's efforts to pursue a legal claim, prejudiced one of his existing actions, or otherwise actually interfered with his access to the courts.  *Monsky v. Moraghan*, 127 F.3d 243, 247 (2d Cir. 2002).  The defendants must have "deprived him of an opportunity to press some nonfrivolous, arguable cause of action in court."  *Baker v. Weir*, No. 3:16-CV-1066(JAM), 2016 WL 7441064, at *2 (D. Conn., Dec. 27, 2016).  Further, courts considering these claims have held that a plaintiff alleging interference with his access to courts "must have been without the opportunity to overcome the impediment before suffering actual injury."  *Pacheco v. Zurlo*, No. 9:09-CV-1330 TJM ATB, 2011 WL 1103102, at *9 (N.D.N.Y. Feb. 8, 2011), *report and recommendation adopted*, 2011 WL 1102769 (N.D.N.Y. Mar. 23, 2011) (quoting *Odom v. Baker*, No. 02-CV-757F, 2008 WL 281789, at *5 (W.D.N.Y. Jan. 31, 2008)); *see, e.g., Thomas v. Ryan*, 735 F.

16

App'x 351, 352 (9th Cir. 2018) (plaintiff failed to show actual injury where action was dismissed without prejudice and plaintiff was able to refile) .

Cerilli states that the CD was required in support of his appeal.  The court assumes that he was appealing the denial of the state habeas petition regarding his medical care in 2017.  As Cerilli provides no information regarding the grounds for appeal, the court cannot determine whether the appeal was arguable or frivolous.  In addition, it is not clear that Cerilli could not file his appeal without the CD and seek assistance from the appellate court in having correctional officials forward the CD to the court.  Thus, Cerilli has not plausibly alleged any actual injury. The court will not, however, afford Cerilli an opportunity to amend the complaint to address these deficiencies as the claim is improperly joined in this action.

Federal Rule of Civil Procedure 20 permits joinder of multiple defendants in one action only if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences, and any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  "What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case by case basis."  *Kehr ex rel. Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008) (citation omitted).  As the Second Circuit has observed in the Rule 13 context,[5] whether a counterclaim arises out of the same transaction as the original claim depends upon the logical relationship between the claims and

---

[5] "In construing the term 'transaction or occurrence' under Rule 20, many courts have drawn guidance from the use of the same term in Rule 13(a), applying to compulsory counterclaims."  *Barnhart v. Town of Parma*, 252 F.R.D. 156, 160 (W.D.N.Y. 2008) (citation omitted).

whether the "essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit." *Harris v. Steinem*, 571 F.2d 119, 123 (2d Cir. 1978).

The claim regarding the CD bears no resemblance to his claims against the medical staff. There are no common questions of fact or law connecting this claim with the medical claims. Thus, the claims are improperly joined in this action in violation of Rule 20.[6] *See Wilson v. McKenna*, 2015 WL 1471908, at *6 (D. Conn. Mar. 31, 2015) (advising plaintiff that improperly joined claims must be pursued in separate actions).

The Court may sever and dismiss improperly joined claims. *See* Fed. R. Civ. P. 21 (permitting the court to drop a party or sever a claim where the parties have been misjoined). As Cerilli has been permitted to file this action based on his medical claims, the court will sever and dismiss without prejudice his access to courts claim. Cerilli may file a separate lawsuit if he wishes to pursue this claim.[7]

**Supervisory Liability**

Cerilli asserts claims for supervisory liability against Governor Lamont, Commissioner

---

[6] The court notes that Rule 20 is becoming increasingly important to district courts tasked with reviewing prisoner complaints pursuant to 28 U.S.C. § 1915A. As two commentators have noted:

> In the past, courts did not always pay much attention to this rule. However, nowadays they are concerned that prisoners will try to avoid the filing fee and "three strikes" provisions of the Prison Litigation Reform Act (PLRA) by joining claims in one complaint that really should be filed in separate actions which require separate filing fees and would count as separate "strikes" if dismissed on certain grounds.

John Boston & Daniel E. Manville, *Prisoners' Self-Help Litigation Manual* 348 (4th ed. 2010) (collecting cases).

[7] The Court observes however that the access to courts claim does not appear to implicate any danger to the Plaintiff, imminent or otherwise. As such, he would likely be required to prepay the filing fee if he were to bring a separate lawsuit pursuing this claim.

Cook, and Deputy Wardens Thibeault and Hines.  Cerilli refers to Governor Lamont as the

"supreme commander of all above defendants," Doc. No. 1 at 15; Commissioner Cook as

"commander of all Department of Correction," *id*. at 14; and alleges "deputy wardens are to be in

charge of the medical," *id* at 10, 13.  Any claims against these defendants based only on their

positions as supervisory officials are not cognizable.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676

(2009) ("Government officials may not be held liable for the unconstitutional conduct of their

subordinates under a theory of *respondeat superior*.").  Cerilli asserts only conclusory allegations

against Governor Lamont based on his position as governor.  Assertions of what Cerilli believes

defendants Lamont and Hines should do because of the positions they hold are insufficient to

state claims for supervisory liability.  The claims against defendants Lamont and Hines are

dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

> To state a cognizable claim for supervisor liability, Cerilli must show that:
>
> "(1) the defendant participated directly in the alleged constitutional violation, (2)
> the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference ... by failing to act on information indicating that
> unconstitutional acts were occurring."

*Shaw v. Prindle*, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting *Colon v. Coughlin*, 58 F.3d 865,

873 (2d Cir. 1995)).

Cerilli alleges that he sent letters to the Commissioner's Office about his various issues

and that the commissioner referred the letters to Captain Colon.  Doc. No. 1 at 14.  Referring a

letter to a subordinate for action is insufficient to establish the personal involvement of a

19

supervisory official. *See Rodriguez v. Rock*, No. 9:13-CV-01106(DNH/DEP), 2015 WL 5147045, at *6 (N.D.N.Y. Sept. 1, 2015) (where a supervisor's only involvement is referral of correspondence to appropriate staff, supervisor has insufficient personal involvement to support a section 1983 claim) (citing cases). As Cerilli alleges no further involvement by Commissioner Cook, the claim against him is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

Cerilli alleges that he met with Deputy Warden Thibeault and others regarding his complaints and attaches a copy of the notes from the February 11, 2020 meeting. Doc. No. 1 at 266. The only issue relevant to this action was his complaint relating to medication. Defendant Furey, who was present at the meeting, indicated that he would investigate the matter. *Id.* The only other document referencing defendant Thibeault shows that defendant Thibeault returned various documents to Cerilli with instructions that he should submit the documents to the proper person for resolution of his issues. *Id.* at 278. These documents show that Deputy Warden Thibeault acted in response to Cerilli's claims. That Cerilli was not satisfied with the response, does not establish supervisory liability. The claim against Deputy Warden Thibeault is dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### Consolidation of State Habeas Case

Finally, Cerilli asks that a state habeas action, in which his petition was denied, No. CV17-4009013-S, be consolidated with this case. In the state case, Cerilli challenged the way the Department of Correction managed his pain and sought proper treatment for his diabetes. Cerilli sought an additional 5 mg of oxycodone per day and elimination of certain foods from his diet. The state court found that Cerilli suffers from chronic back pain which is rarely managed effectively with narcotic pain medication alone, the only treatment to which Cerilli agrees. The

state court also found that Cerilli's diabetes was adequately managed with his diet and medication. Thus, the state court found that that the Department of Correction was not deliberately indifferent to Cerilli's medical needs and denied the petition. *See* Memorandum of Decision, Doc. No. 1 at 79-85. From his hand written comments on the copy of the memorandum of decision he attaches, the court discerns that Cerilli was not pleased with the result.

Federal Rule of Civil Procedure 42(a) governs consolidation of actions. Cases may be consolidated if they are before the court and involve a common question of law or fact. Fed. R. Civ. P. 42(a). Cerilli's state case is not before the federal court. Thus, consolidation is not appropriate. Further, the issues in the state case have already been decided. Thus, if Cerilli were to refile the same claims in this case, the court would be bound, under the doctrine of res judicata, by the decision reached in the state case. *See Barnett v. Connecticut Light & Power Co.*, 900 F. Supp. 2d 224, 238-39 (D. Conn. 2012) (explaining that res judicata bars relitigation in federal court of same claim against same defendants or those in privity with defendants in state case). The state habeas court determined dismissed Cerilli's Eighth Amendment claim that the defendants were deliberately indifferent to his medical needs regarding pain management and treatment for his diabetes in 2017, the year he filed the state action. Doc. No. 1 at 79-85. Thus, he cannot reassert these claims in this case. Cerilli's recourse if he was dissatisfied with the trial court's decision was an appeal to the state appellate courts and a petition for certiorari in the United States Supreme Court. The request to consolidate is DENIED.

**Motion for Copies**

Cerilli also has filed a motion for copies in which he seeks a copy of his complaint and all exhibits.  He also asks to be excused from participation in the Prisoner Electronic Filing Program.  Cerilli states that he cannot use the Prisoner Electronic Filing Program because FOI Liaison Acanto has been stealing money from him as shown in the exhibits to the complaint and was involved in the confiscation of the CD.  Although Cerilli has submitted hundreds of pages of exhibits, no exhibit shows that defendant Acanto stole money from him.

The Prisoner Electronic Filing Program is mandatory.  *See* CATO 16-21, Standing Order on Prisoner Electronic Filing Program (Updated) ("The Program applies to all cases brought by prisoners who are currently incarcerated in a DOC facility.  All documents filed by prisoners must be filed electronically using the Program procedures.") (available at ctd.uscourts.gov/administrative-standing-orders).  As the Program is mandatory, Cerilli must file using Program procedures.

In addition, although the court has granted Cerilli permission to proceed in this action *in forma pauperis*, that status does not entitle him to free copies of documents.  *See Collins v. Goord*, 438 F. Supp. 2d 399, 416 (S.D.N.Y. 2006) (inmates have no constitutional right to free photocopies); *see also Guinn v. Hoecker*, 43 F.3d 1483 (10th Cir., 1994) (28 U.S.C. § 1915 does not include a right to a free copy of any document in the court record; court may constitutionally require indigent plaintiff to demonstrate need for free copy).  Cerilli chose to ignore the requirement that he file electronically and mail his complaint to the court.  It was his responsibility to make any required copies before mailing.  If he seeks a copy of the complaint, he may contact the Clerk to ascertain the copying fee.

**Orders**

Cerilli's motion to proceed *in forma pauperis* [**Doc. No. 2**] is **GRANTED**.

All claims against defendants Inmate Account Doe, Acanto, Moore, Blood Medic Doe, Lamont, Cook, Thibeault, and Hines are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b).   The claims against defendants Colon, and Shepherd is **SEVERED** and **DISMISSED** without prejudice under Federal Rule of Civil Procedure 21.  Cerilli may pursue this claim in another action.  The request to consolidate the state habeas action with this case is **DENIED**.

The case will proceed on the claims for deliberate indifference to medical and dental needs as set forth above against defendants Wright, Dr. Doe, Hanna, Furey, Katz, and Nickel. **However, before the court orders service on any defendant, Cerilli must file an amended complaint that complies with the requirement that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).** The Complaint, as noted above, is completely unwieldy and largely inscrutable. It would be fundamentally unfair to ask any defendant to answer the allegations as presently written. There is no statement of facts and no clear listing of the claims he is asserting as to each defendant.  In addition, Cerilli has filed hundreds of pages of exhibits many of which date back to 2013 and 2014, the relevance of which is utterly unclear.[8]  Although he generally refers to exhibits in his complaint, he does not clearly identify which exhibits are intended to support which claims.  And since he labeled multiple exhibits as "Exhibit A," a general reference to such an exhibit is not helpful.

-------

[8] The court notes that Cerilli refers to treatment by persons who are not defendants in this case and incidents that occurred in 2013 and 2014.  Such claims are not properly asserted in this case as the persons involved are not defendants, Cerilli appears to have asserted those claims in the state habeas case, and in any event the claims are barred by three-year limitations period.

Cerilli is directed to file an amended complaint including **only** his claims for deliberate indifference to medical and dental needs against defendants Drs. Wright, Doe, Katz, and Nickel, Nurse Hanna, and CCO Furey.  He shall clearly state his claim against each defendant and the relevant facts to support the claim including when the events at issue occurred.  Exhibits are not required.  Cerilli shall file the amended complaint within on or before **November 8, 2020 using the Prisoner Efiling Program**.  The court will review the amended complaint and order service with respect to any plausible claims for relief.

Cerilli's motion for copies [**Doc. No. 7**] is **DENIED**.

**SO ORDERED** at Bridgeport, Connecticut, this 9th day of October 2020.

/s/
Kari A. Dooley
United States District Judge